**IN THE COURT OF APPEALS OF IOWA**

No. 24-2019
Filed March 5, 2025

**IN THE INTEREST OF J.W. and J.W.,**
**Minor Children,**

**J.W., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Linn County, Cynthia S. Finley, Judge.

A mother appeals termination of her parental rights to two children. **AFFIRMED.**

Ellen Ramsey-Kacena, Assistant Public Defender, Cedar Rapids, for appellant mother.

Brenna Bird, Attorney General, and Lisa Jeanes, Assistant Attorney General, for appellee State.

Robin L. O'Brien Licht, Cedar Rapids, attorney and guardian ad litem for minor children.

Considered by Ahlers, P.J., and Badding and Buller, JJ.

**BULLER, Judge.**

The mother appeals termination of her parental rights to J.W. (born 2018) and J.W. (born 2019).  The fathers' rights are not at issue in this appeal.  On our review of the preserved errors, we affirm.

**Background Facts and Proceedings.**  This family originally came to the attention of the Iowa Department of Health and Human Services (HHS) in 2022, when the department issued a founded child-abuse assessment for burns and other physical injuries to the younger child.  In June 2023, HHS conducted another assessment based on reports of physical injuries inflicted by the mother and her marijuana use, but the family's lack of cooperation and a placement with relatives out of state led to the assessment being closed without a formal juvenile-court adjudication.

In October 2023, the department again became involved when the younger child was found unresponsive and taken to the hospital for medical treatment of multiple injuries believed to be intentionally inflicted by the mother.  The injuries included fluid in the child's lungs consistent with drowning, "lacerations all over his body," missing teeth, vertebral fractures, scars, burns, numerous hematomas of the skull and other body parts, and damage to his retinas.  Medical reports concluded the injuries were indicative of "child abuse by torture" perpetrated over a period of time.  The older child also had injuries, though less life-threatening— including more than twenty scars in various stage of healing, also found to be consistent with child abuse.  Both children indicated the mother physically injured them and that they were afraid.  Both children tested positive for marijuana, and the younger child tested positive for methamphetamine.

The mother was charged with nine counts of felony child endangerment and, as of the termination trial, remained incarcerated on felony-theft and assault charges while awaiting trial for child endangerment. The children have been removed from her custody since the incident in October 2023.

The juvenile court found both children were in need of assistance. The older child was placed with a relative and foster placements before eventually returning to her father's custody while remaining under HHS's supervision. And the younger child was placed with relative and foster placements while in HHS's legal custody.

The mother reported to HHS that she hears voices in her head, that her mental health was unstable, and that she may have bipolar disorder. And the children's therapist recommended the children not have any contact with the mother due to their fear of her, the history of abuse, and the likelihood the mother would attempt to influence their testimony in the pending criminal case. The HHS worker and the children's guardian ad litem (GAL) also reported the children described similar fears in conversations with them. Both criminal- and juvenile-no-contact orders prohibit any contact between the mother and children; she therefore has not seen or spoken to the children essentially since removal.

The mother did not testify at the termination trial. And she generally declined to cooperate with HHS's assessment, citing the pending criminal charges. She has yet to acknowledge that she physically abused the children.

At trial, the mother's boyfriend told the juvenile court he thought she was a good mother and that the children were not afraid of her. And a friend of the mother testified similarly. The juvenile court "did not find either of these witnesses

credible" and noted they downplayed the extensive injuries inflicted on the younger child by the mother.

The children are doing reasonably well in their placements: the younger child is attending ongoing therapy and therapy is in the works for the older child, both have their needs met, and both continue to have sibling contact.

The county attorney, HHS, and the GAL all recommended termination of parental rights. The juvenile court terminated the mother's rights pursuant to Iowa Code section 232.116(1)(f), (i), and (j) (2024). The mother appeals, and we review de novo. *See In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021). She challenges whether HHS made reasonable efforts to reunite the family, whether termination is in the children's best interests, and whether an exception applies.

**Reasonable Efforts.** The mother's petition claims she preserved error relating to reasonable efforts because there was a trial and she filed a notice of appeal. But that is incorrect as a matter of law. To preserve error regarding reasonable efforts, parents must "object when they claim the nature or extent of services is inadequate," and they must generally do so before the termination trial. *In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017); *see also In re C.B.*, 611 N.W.2d 489, 493–94 (Iowa 2000). And relying on a notice of appeal for error preservation is so inaccurate it now violates the rules of appellate procedure. *See* Iowa R. App. P. 6.903(2)(a)(8)(1) ("Filing a notice of appeal does not preserve an issue for appeal, and citing to the notice does not satisfy this requirement."). We conclude the mother did not preserve her reasonable-efforts claim. But, in any event, we have independently reviewed the record, and we credit the HHS worker's testimony that the department provided appropriate services in this case

given the mother's incarceration and the no-contact orders that prohibited her interacting with the children as a consequence of the mother physically abusing them. And, as far as we can tell, the mother received every service she asked for that could be provided within those limitations. We would find no error even if the claim was preserved.

**Best Interests.** The mother also asserts termination is not in the children's best interests. In making this determination, we give primary weight "to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). In our review of the record, we agree with the juvenile court that termination is in the children's best interests: they suffered years of abuse at the mother's hands, the mother has yet to take any responsibility for inflicting that abuse, the children are doing well in their placements, and they deserve permanency.

**Relative-Custody Exception.** Last, the mother urges that the juvenile court should have declined to terminate her parental rights with regard to the older child because she was in her father's custody. She cites the permissive exception codified at section 232.116(3)(a), concerning relative custody. But she never made any legal argument concerning this issue below. And there is no analysis specific to it contained in the juvenile court's ruling. We conclude error was not preserved. *See In re J.R.*, No. 24-0942, 2025 WL 52738, at *2 (Iowa Ct. App. Jan. 9, 2025) (en banc) (recognizing the parent bears the burden to prove the exceptions to termination and that the parent must preserve error). But even if error had been preserved, we would not thwart termination on this basis. "An

appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child. The child's best interests always remain the first consideration." *In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997). We have already concluded that the children's best interests are met through termination, and this conclusion is not countermanded by the father having custody.

**AFFIRMED.**